IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAMON ABERCROMBIE, | ) | CASE NO. 1:09 CV 1128 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| PHILIP KERNS, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -4-
    A.    Underlying facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -4-
    B.    Direct appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -6-
          1.    Ohio appeals court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -6-
          2.    Supreme Court of Ohio . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -12-
          3.    Federal habeas petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -13-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -14-
    A.    Preliminary observations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -14-
    B.    Standards of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -16-
          1.    Procedural default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -16-
          2.    Noncognizable claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -18-
          3.    AEDPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -20-
          4.    Ineffective assistance of counsel . . . . . . . . . . . . . . . . . . . . . .  -22-
    C.    Application of standards of review . . . . . . . . . . . . . . . . . . . . . . . . . . .  -24-
          1.    To the extent Ground One is viewed as presenting new claims, those
              claims should be dismissed as procedurally defaulted. . . . . . . .  -24-
          2.    Ground Two should be dismissed as a non-cognizable claim . .  -28-
          3.    Ground One should here be denied inasmuch as the decision of the
              state court denying the claim of ineffective assistance of counsel as
              to the failure to retain a defense expert in DNA was not an
              unreasonable application of clearly established federal law. . . .  -30-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -33-

## Introduction

Before me by referral[1] is the *pro se*[2] petition of Ramon Abercrombie for a writ of habeas corpus under 28 U.S.C. § 2254.[3]  Abercrombie is currently incarcerated by the State of Ohio at the Southern Ohio Correctional Facility in Lucasville, Ohio, where he is serving a total consecutive sentence of 16 years on various merged offenses followed by a term of life in prison without the possibility of parole, with a 3-year firearm specification to be served prior and consecutive to the previously identified sentences.  The sentences were imposed in 2005 by the Cuyahoga County Court of Common Pleas after Abercrombie's conviction by a jury on charges which included aggravated robbery and aggravated murder.[4]

In his petition, Abercrombie argues first that he was deprived of the effective assistance of counsel at trial when his defense attorney did not obtain an independent DNA analysis of a saliva sample used to corroborate Abercrombie's presence at the crime scene,

---

[1] ECF # 3.

[2] Abercrombie was represented by counsel when the petition was filed (*see*, ECF # 1), but counsel later withdrew with permission and Abercrombie was ordered to either obtain new counsel or file a notice of intent to proceed *pro se* (non-document order of July 1, 2009.) Although Abercrombie asked for and was granted an extension of time within which to either obtain new counsel or elect to proceed *pro se* (*see*, ECF # 7; non-document order of July 21, 2009), he has done neither nor asked for any additional extensions.  Consequently, Abercrombie's inaction with respect to obtaining new counsel since the expiration of the September 15, 2009 deadline imposed by my last order is deemed as his intent to proceed *pro se.*

[3] ECF # 1.

[4] *Id.*  The merged sentences are also to be served consecutively to terms of 3 and 9 years.

-2-

and when defense counsel did not object to the testimony of the decedent's mother, which Abercrombie asserts was prejudicial to him.[5]  In his second claim, Abercrombie contends that admitting the testimony of the victim's mother deprived him of a fair trial.[6]

The State in its return of the writ contends with regard to ground one that portions of that ineffective assistance claim are procedurally defaulted for not having been raised before the Ohio courts, with no ability to now do so.[7]  The State further asserts that the balance of ground one is properly denied here as the state court decision denying the claim was not an unreasonable application of the clearly established federal law of *Strickland v. Washington*.[8]  Finally, the State argues that ground two, which raises an issue concerning the admission of victim-impact testimony at the culpability phase of trial, should be dismissed here as non-cognizable since it involves an issue of state law.[9]

For the reasons that follow, I will recommend that Abercrombie's petition be dismissed in part and denied in part.

---

[5] *Id*. at 4.

[6] *Id*. at 5.

[7] ECF # 12 at 9-11.

[8] *Id*. at 21-25.

[9] *Id*. at 35-38.

# Facts

**A.      Underlying facts**

The Ohio appellate court[10] set forth the underlying facts of the crime and the resulting

trial, as follows:

> On June 16, 2006, Marquis McCalep ("Marquis") and his step-brother,
> Anthony Brown ("Anthony"), were shot in the basement of a Harvard Road
> apartment complex.  Anthony died, but Marquis was able to walk down
> Harvard Road and was aided by a motorist, who called an ambulance.
> Marquis was treated at Metro Hospital for four gunshot wounds to his ankle,
> arm, back, and neck.  Police found Anthony dead at the crime scene.

> Marquis identified the shooter as defendant.  Marquis and Anthony had
> attended school with the defendant.  That night, the three were "battle rapping"
> and shared two 40-ounce beers in the basement.  Marquis saw defendant
> extend his arms with a small silver pistol and say, "You all are stupid.  What
> you all got?"  Marquis took this to mean he and his brother were being robbed.

> Anthony began walking toward the defendant believing he was not
> serious.  Defendant shot Anthony.  Marquis walked over and emptied his
> pockets, dropped to his knees, and laid face flat on the basement floor.
> Defendant then began shooting him.  Marquis was shot in the ankle, back, left
> arm, and the back of his head.  Defendant ran up the steps.  Marquis then went
> to a female's apartment and told her Anthony had been shot.  Then he started
> walking up Harvard to get help.  He was taken by ambulance to Metro
> Hospital.

> Marquis and Anthony both attended Charles W. Elliott Middle School
> with the defendant and knew him from school.  Marquis testified that he
> "instantly" identified defendant from a photo array.

> Other tenants from the apartment complex confirmed hearing shots and
> calling 911.

---

[10] Facts found by the state appeals court in its review of the record are presumed
correct by the federal habeas court.  28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d
629, 637 (6th Cir. 2001).

Various expert witnesses testified at trial, including Carey Martin, a forensic scientist from the Cuyahoga County Coroner's Office, who analyzed various DNA samples. In particular, Ms. Martin examined a swab taken from the mouth of a beer bottle that was recovered from the scene and was designated as 25.1 in Ms. Martin's report. From the swab, Ms. Martin was able to extract a DNA profile. Ms. Martin also analyzed and compared samples from a swab off the basement floor of the crime scene and a swab taken from the second-floor hallway. She compared the samples to the DNA standards of the victim Anthony Brown and defendant. The DNA profile obtained from item 25.1, the swab from the malt liquor bottle, was a "mixture," i.e., a combination of more than one person's DNA. Ms. Martin could not exclude defendant as a possible contributor to that mixture. Ms. Martin explained, "saying I can't exclude them says that when I looked at their genetic profiles next to the mixture, I can see their DNA profile in that mix, so I can't exclude them as being a possible contributor to that mixture."

The swabs taken from the basement floor and the second-floor hallway did not match either Brown's or the defendant's DNA profile.

The trial court granted defendant's motion for an independent lab analysis. However, due to the reported weakness of the sample, Ms. Martin's testing did not allow for an independent test. Ms. Martin sent all the samples, along with various other information, including the sources used in rendering her opinion, to a lab that was selected by the defense. The defense chose not to offer an expert witness as to the DNA evidence.

The defendant's motion in limine to exclude the report and testimony of Ms. Martin was denied. Defense counsel cross-examined Ms. Martin and questioned her qualifications, the qualifications of the lab itself, and the reliability of her DNA analysis. Counsel established that at the time Ms. Martin performed the DNA analysis in this case, her lab was not accredited. Counsel established that Ms. Martin's testing consumed the DNA sample, leaving none for an independent test.

On redirect, Ms. Martin explained that "the sample was going to be very weak, it was a very weak sample even though both portions of the swab were used, which was done because of the nature of the sample." Ms. Martin denied making a conscious decision to use the sample all up and maintained that if she would not have had to use both ends of the swab, she would not have done so.

-5-

Jeanie McCalep also testified briefly at the trial.  She is the mother of both victims.  Her testimony established the schools the victims attended and the years of attendance.  Ms. McCalep did not testify about the impact of her son's death and/or her other son's injuries.

A paralegal from the Cleveland Municipal School District confirmed that the victims and the defendant all attended Charles Elliot Middle School in the 2000/2001 school year.  Further, victim Anthony Brown and the defendant were in the same section.

After the jury returned its verdict, the trial court sentenced defendant to 15 years on count one, life without parole on count two, nine years on counts three, four, five and six, and ten years on count seven.  Counts one, two, three, and five were merged, as were counts four, six, and seven.  Defendant is serving consecutive sentences on the separately merged counts, which is a 16-year sentence, followed by a term of life in prison without the possibility of parole. All counts also included a three-year firearm specification to be served prior to and consecutive to the previously identified sentence.[11]

## B.    Direct appeal

### 1.    *Ohio appeals court*

Abercrombie, through different counsel, timely appealed his conviction and sentence

to the Ohio appeals court raising the following two assignments of error:

First Assignment of Error:  The appellant was denied the effective assistance of counsel at trial.[12]

Issue Presented:  The failure to obtain expert DNA assistance in a case where DNA is the sole corroboration to eyewitness testimony constitutes ineffective assistance of counsel under United *States v. Cronic*, 466 U.S. 648 (1984).[13]

---

[11] ECF # 12, Attachment (state record) (state appellate court opinion) at 150-54.

[12] *Id*. at 102.

[13] *Id.* at 103.

Second Assignment of Error:  The State improperly adduced victim-impact evidence during the culpability determination phase of the trial.[14]

Issue Presented:  The prosecution may not call as a witness the mother of the victim during the culpability phase of a capital trial to testify about the life of her lost child.  Such testimony constitutes inadmissible victim-impact evidence.[15]

As to the first assignment of error – ineffective assistance of counsel – it is important to note at the outset that Abercrombie argued ineffective assistance on an additional ground beyond the single ground set forth under the "issue presented" heading.  This secondary ground, which contends that counsel was ineffective for not objecting to the alleged victim impact testimony, is briefly mentioned in the discussion of ground one in the appellate brief, where Abercrombie then says it will be discussed in greater detail in ground two (which assignment of error does not of itself deal with the issue of ineffective assistance).[16]

The placing of this secondary ineffective assistance argument in both assignments of error and in this manner, predictably, resulted in some confusion for the Ohio appeals court. As the State observes here, the element of the claim of ineffective assistance based on a failure to object to the alleged victim-impact testimony was only stated in the section of Abercrombie's appellate brief dealing with the first assignment of error – ineffective assistance –  in "a very cursory and easily overlooked manner."[17]  Thus, this argument, the

---

[14] *Id.* at 102.

[15] *Id*. at 103.

[16] *Id*. at 108.

[17] ECF # 12 at 33.

State points out, "apparently escaped the notice of the state court of appeals,"[18] which proceeded to decide the ineffective assistance claim without reference to this aspect, and further decided the second assignment of error – the admission of the testimony of the victim's mother – also without reference to whether it involved any ineffective assistance of counsel.

In sum, it appears that Abercrombie has advanced two distinct theories of ineffective assistance of counsel throughout his state appeal and into this current federal habeas petition. The fact that the state appeals court, and later the Ohio Supreme Court, may not have addressed the secondary theory of ineffective assistance in their decisions does not alter the fact that both theories of ineffective assistance are exhausted for federal habeas purposes.[19] However, because no state court decision is available for review by the federal habeas court, any constitutional claim presented to, but not decided by, the state courts will be reviewed *de novo* by the federal habeas court.[20]

That said, in Abercrombie's appellate brief, he argues the major reason his counsel was ineffective was that he did not "properly attack the methodology invoked (sic) by the state's testing lab," which methodology resulted in the state lab using up the entire saliva

---

[18] *Id*.

[19] *Clinkscale v. Carter*, 375 F.3d 430, 437-38 (6th Cir. 2004). Petitioner is only required to raise his claims to the state courts; exhaustion does not require the state court to actually adjudicate the merits of the claims.

[20] *Henley v. Bell*, 487 F.3d 379, 390 (6th Cir. 2007).

sample, leaving no remnant for any independent testing by a defense lab.[21]  Abercrombie's specific theory here is that by not retaining a defense expert on the methodology of DNA testing, counsel left undeveloped an issue that the state, through improper methods, caused the entire saliva sample to be used up or spoiled before the defense could run its own DNA tests on that sample, thereby leaving Abercrombie without a way to attack the DNA evidence adduced at trial.[22]  He also argued that, because it was a capital case, counsel had a special duty to request an expert and to preserve the matter for further review.[23]

As to the second assignment of error concerning the admission of the testimony of the victim's mother, Abercrombie argued the matter as one grounded in a purported violation of state law. In particular, he contended that Ohio's rule against the use of victim-impact testimony is rooted in the syllabus of the Ohio Supreme Court case of *State v. White*[24] and so is "based on independent state grounds"[25] that survive any limitations on the federal prohibition of such testimony traceable to the United States Supreme Court's decision in *Payne v. Tennessee*.[26]  He further grounded this argument as one solely based on an alleged violation of state – not federal – law by citing to and extensively discussing *State v.*

---

[21] ECF # 12, Attachment (state court record) (Abercrombie's brief on appeal) at 108.

[22] *Id*.

[23] *Id*. at 114.

[24] *State v. White*, 15 Ohio St. 3d 146, 472 N.E.2d 1091 (1968).

[25] ECF # 12, Attachment at 116.

[26] *Payne v. Tennessee*, 501 U.S. 808 (1991).

*Fautenberry*[27] and Ohio Rules of Evidence 401 and 403.[28]  Only in the final single sentence of this multi-page portion of the brief does Abercrombie make the perfunctory statement that the court's rulings admitting this testimony "were violative of the Fifth, Sixth, Eighth and Fourteenth Amendments."[29]

The State, in turn, argued that defense counsel was not constitutionally ineffective in contesting the DNA evidence,[30] and further that the testimony of the victim's mother was proper, but if improper, it was not determinative of the result.[31]

The appellate court affirmed the judgment below.

As to the claim of ineffective assistance, the court concluded that neither prong of the ineffective assistance test of *Washington v. Strickland*,[32] as incorporated into Ohio law by *State v. Kole*,[33] was met.[34]  First, as to counsel's performance, it found that the lack of a defense expert on DNA did not preclude the defense from vigorously cross-examining the

---

[27] *State v. Fauenberry*, 72 Ohio St. 3d 435, 650 N.E.2d 878 (1995).

[28] ECF # 12, Attachment at 117-18.

[29] ECF # 12, Attachment at 119.

[30] *Id*. at 138-42.

[31] *Id*. at 142-46.

[32] *Strickland v. Washington*, 466 U.S. 668 (1984).

[33] *State v. Kole*, 92 Ohio St. 3d 303, 750 N.E.2d 148 (2001).

[34] ECF # 12, Attachment at 155.

-10-

prosecution's expert.[35]  Further, as to prejudice, it noted that even if the defense had succeeded in removing the DNA evidence from this case, the State still had a strong case in the eyewitness testimony of the surviving victim who was well-acquainted with the defendant.[36]

Concerning the argument that the State had improperly adduced victim-impact testimony from the victim's mother during the culpability phase of the trial, the Ohio appeals court disagreed. It observed that the mother testified to the fact that both victims were step-brothers and that both attended school with the defendant, corroborating that the defendant was acquainted with the victims.[37]  The court pointedly noted that the mother "did not give any testimony as to the impact that the crimes had on her or her family."[38] Accordingly, the appellate court found that her testimony did not qualify as victim-impact evidence and so its admission was not improper.[39] The appellate opinion was based solely on its analysis of Ohio law and the trial court's decision to admit the testimony, and did not address any federal question as to counsel's ineffectiveness in not objecting to the testimony or in the admissibility of such evidence.

---

[35] *Id*. at 155-57.

[36] *Id*. at 157-58.

[37] *Id*. at 158-59.

[38] *Id.* at 159.

[39] *Id*.

### 2.    *Supreme Court of Ohio*

Following the decision of the Ohio appeals court, Abercrombie, through his existing

appellate counsel, timely filed an appeal with the Supreme Court of Ohio[40] asserting the

following two propositions of law:

> 1.    The failure to obtain expert DNA assistance in a case where DNA is the
> sole corroboration to eyewitness testimony constitutes ineffective
> assistance under *United States v. Cronic*, 466 U.S. 648 (1984).

> 2.    The prosecution may not call as a witness the mother of the victim
> during the culpability phase of a capital trial to testify about the life of
> her lost child.  Such evidence constitutes inadmissible victim-impact
> testimony.[41]

The State waived filing a response,[42] and on February 20, 2008, the Supreme Court

of Ohio denied Abercrombie leave to appeal, dismissing his appeal as not involving any

substantial constitutional question.[43]

The record does not show that Abercrombie sought a writ of certiorari from the United

States Supreme Court, nor that he filed any subsequent post-conviction motions in the Ohio

courts.

---

[40] *Id*. at 167-68

[41] *Id*. at 170.

[42] *Id.* at 199.

[43] *Id*. at 200.

### 3.     *Federal habeas petition*

On May 15, 2009, Abercrombie filed the present petition for habeas relief in this

Court[44] asserting the following two grounds for relief:

1.      Ground One:  Sixth Amendment

Supporting facts:  Petitioner was denied effective assistance of counsel
when counsel failed to obtain experts concerning DNA analysis and was not
properly informed concerning the methodology used by the state testing
laboratory which used the saliva sample and left none for independent testing.
Further, counsel failed to object to the victim impact evidence contained in the
testimony of the mother of the decedent.[45]

2.      Ground Two:  Fourteenth Amendment

Supporting facts:  Petitioner was denied a fair trial.  At trial which was
the first phase of a capital prosecution, the state called Jeanie McCalep the
mother of the decedent as a witness.  She was solely called to introduce
emotional testimony from a mother who had just lost her son, Anthony Brown.
The impact of this was to deny petitioner a fair trial.  This was totally
irrelevant to whether petitioner was guilty of the offense.[46]

The State, in its return of the writ,[47] notes first that Abercrombie's federal habeas

claim of ineffective assistance differs in two ways from that claim in his state court direct

appeal.[48]  Specifically, the State observes that:  (1) the federal habeas claim is more broadly

stated with respect to counsel's purported failure to retain a defense expert to contest the

---

[44] ECF # 1.

[45] *Id*. at 4.

[46] *Id.* at 5.

[47] ECF # 12.

[48] *Id*. at 8

-13-

prosecution's DNA evidence than was the state appellate argument;[49] and (2) the federal habeas claim here introduces the wholly new argument that counsel was ineffective for not being informed as to the lab methodology prior to cross-examining the prosecution's expert.[50]

The State then contends that any new argument in ground one should have been presented in a post-conviction petition, but that, since such a petition is now untimely, Abercrombie has procedurally defaulted the newly-presented element of ground one.[51]  It further contends that ground two – addressing the admission of testimony from the victim's mother – is non-cognizable in a federal habeas action.[52]  Finally, it maintains that Abercrombie's contention in ground two that he was denied fundamental fairness at trial is without merit.[53]

Abercrombie did not file a traverse.

## Analysis

### A.    Preliminary observations

Prior to discussing the claims presented, I note initially, with respect to the statutory bases for federal habeas relief, that there is no dispute that:  (1) Abercrombie is currently in

---

[49] *Id*. at 8-9.

[50] *Id*. at 9-10.

[51] *Id*. at 11-15.

[52] *Id*. at 16-17.

[53] *Id.* at 18-19.

state custody as a result of his conviction and sentence by an Ohio court,[54] and (2) his petition was filed within one year of his state conviction becoming final.[55]  In particular, as to timeliness, I note that while the petition was filed on May 15, 2009, Ambercrombie's state appeal ended on February 20, 2008.  However, I also note that, although Abercrombie did not seek a writ of certiorari from the United States Supreme Court after the Ohio Supreme Court rejected his appeal, the statutory one-year limitations period for filing his habeas action does not begun to run until one day after the 90 period for filing a petition for certiorari has expired, whether such a petition was filed or not.[56]  Thus, Abercrombie's petition is timely-filed.

I further observe as a preliminary matter that Abercrombie's petition is fully exhausted.  As the State correctly notes, the claims in the petition are not identically worded to the claims presented to state court.  However, such variations may not necessarily represent the introduction of a new claim, particularly where a review of the brief supporting the state appellate claim discloses, as here, that the allegedly new federal claim was, in fact, part of the argument made below in support of the state claim.

That said, assuming Abercrombie raised a new claim here, if he has no further remedy available in state court to present new claims, a petition containing such new claims should

---

[54] 28 U.S.C. § 2254(a).

[55] 28 U.S.C. § 2244(d).

[56] *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

not be dismissed for lack of exhaustion since there are no remedies left to exhaust.[57] Rather, as will also be discussed more fully later, any such new claims should be evaluated under the doctrine of procedural default and only entertained by the federal court if Abercrombie can show cause for his failure to assert them to a state court while remedies were available and prejudice as a result of the alleged violations of federal law.[58]

Finally, I also observe that Abercrombie has not requested an evidentiary hearing,[59] nor has he sought appointment of counsel[60] under the applicable statutory provisions.

**B.    Standards of review**

*1.    Procedural default*

Under the doctrine of procedural default, the federal habeas court cannot review a claim for relief if the petitioner failed to obtain consideration of that claim on its merits in state court, either because the petitioner failed to raise it when state remedies were still available or because of some other violation of a state procedural rule.[61]

When a violation of a state procedural rule is alleged as the basis for the default, the Sixth Circuit has long-employed a four-part test to determine if the claim is procedurally defaulted in a federal habeas proceeding:

---

[57] *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995).

[58] *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004).

[59] 28 U.S.C. § 2254(e)(2).

[60] 28 U.S.C. § 2254(h).

[61] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

(1)    Does a state procedural rule exist that applies to the petitioner's claim?

(2)    Did the petitioner fail to comply with that rule?

(3)    Did the state court rely on that failure as the basis for its refusal to address the merits of the petitioner's claim?

(4)    Is the state rule violated by the petitioner an adequate and independent state law basis for barring the federal court from considering the claim?[62]

In addition to establishing these elements, the state procedural rule must be shown to be (a) firmly established and (b) regularly followed before the federal habeas court will decline to review an allegedly procedurally defaulted claim.[63]

If a procedural default is established, the default may be overcome if the petitioner can show cause for the default and actual prejudice from the court's failure to address the alleged constitutional violation.[64]  In addition, procedural default may also be excused by a showing of actual innocence.[65]

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule.[66]  Demonstrating "prejudice" requires the petitioner to show that the alleged

---

[62] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

[63] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

[64] *Deitz*, 391 F.3d at 808.

[65] *Id*.

[66] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension.[67] There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial.[68]

Notwithstanding these elements, the Supreme Court has held that federal habeas courts are not required to consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[69] In that regard, the Sixth Circuit has stated that a federal habeas court may bypass an issue of procedural default when that issue presents complicated questions of state law and addressing it is unnecessary to resolving the claim against the petitioner on the merits.[70]

## 2.     *Noncognizable claims*

The federal habeas statute, by its own terms, restricts the writ to state prisoners who are in custody in violation of federal law.[71] Accordingly, it is well-settled that, to the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which federal habeas relief may be granted.[72] In such circumstances, a claim

---

[67] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[68] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

[69] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[70] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

[71] 28 U.S.C. § 2254(a).

[72] *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990).

for federal habeas relief based solely on the ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[73]

However, a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the petitioner being denied "fundamental fairness" at trial.[74]  The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate the "fundamental fairness"of a trial.[75]  Specifically, such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[76]

The petitioner bears the burden of showing that a principle of fundamental fairness was violated.[77]  In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[78] and may not second-guess a state court's interpretation of its own procedural rules.[79]  Further, while, in general, distinct constitutional claims of trial error may not be cumulated to grant habeas relief,[80] the Sixth Circuit has

---

[73] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir.2007).

[74] *Estelle*, 502 U.S. at 67-68.

[75] *Bey*, 500 F.3d at 522, quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[76] *Id*. at 521, quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[77] *Id.*

[78] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[79] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[80] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

recognized that "'[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[81]

### 3.      AEDPA

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute is plain that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[82]

In applying that statute, a federal habeas court is guided by the well-known teachings of *Williams v. Taylor*.[83]   As stated by the United States Supreme Court in *Williams,* a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[84] *Williams* further holds that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal

---

[81] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983).

[82] 28 U.S.C. § 2254(d).

[83] *Williams v. Taylor*, 529 U.S. 362 (2000).

[84] *Id.* at 412.  *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

-20-

principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[85]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."[86]  Rather, the state court holding may be disturbed only upon showing that it was "objectively unreasonable."[87]

In addition, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[88]

Finally, where a state court does not address the merits of a federal claim properly presented to it, "the deference due [a state court decision by the federal habeas court] under the AEDPA does not apply."[89]  Then, the federal court is to review the claim *de novo*.[90]

---

[85] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

[86] *Williams*, 529 U.S. at 411.

[87] *Id*. at 409.

[88] *Id.* at 405-07.  *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

[89] *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[90] *Id.*

4.      *Ineffective assistance of counsel*

In *Higgins v. Renico*,[91] the Sixth Circuit re-stated the foundational rubric for reviewing claims of ineffective assistance of counsel pursuant to the long-standing teaching of *Strickland v. Washington*:[92]

> Under *Strickland*, a defendant must establish both that his counsel's performance was seriously deficient and also that he suffered prejudice as a result of such deficiency.[93]

The *Higgins* court then proceeded to discuss the applicable standards for evaluating each prong of the *Strickland* test.  It explained seriously deficient performance in the following terms:

> When complaining of his counsel's deficient performance, a convicted defendant must show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms."  A reviewing court must judge the reasonableness of counsel's actions on the facts of the defendant's case, viewed from counsel's perspective at the time, recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  In essence, a defendant has the burden of proving by a preponderance of the evidence, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."
>
> "Because advocacy is an art not a science, ... [counsel's] strategic choices must be respected" if they were made after a thorough investigation of the law and facts relevant to possible options."  Such choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference.  Indeed, such

---

[91] *Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006).

[92] *Strickland*, 466 U.S. 668.

[93] *Higgins*, 470 F.3d at 631.

-22-

strategic choices are virtually unchallengeable.  As explained by the Supreme Court:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Thus, counsel cannot be adjudged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy."[94]

The clearly established federal law of establishing prejudice from deficient performance of counsel was stated by the *Higgins* court as follows:

> Even where counsel's performance is deficient, a petitioner is not entitled to habeas relief unless he also demonstrates ensuing prejudice.  In evaluating the prejudice suffered by a defendant as a result of his counsel's deficient performance, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings." Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

_____

[94] *Id.* at 631-32 (internal citations omitted).

-23-

different."  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Although the defendant need not prove that counsel's deficient conduct more likely than not affected the verdict, the defendant must show that "absent his counsel's error, the courts of appeal would have reasonable doubt with respect to his guilt."  "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."  In this vein, the court must determine whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."

Whether an error actually prejudiced a defendant is weighed against the "totality of the evidence before the judge or jury."  A verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."[95]

Moreover, it is well-settled that a federal habeas court may, as an initial inquiry, consider either the alleged deficiency itself or the claim of prejudice resulting from such deficiency since establishing both prongs is required to grant the writ.[96]

## C.    Application of standards of review

### 1.    *To the extent Ground One is viewed as presenting new claims, those claims should be dismissed as procedurally defaulted*.

As noted earlier, the claim of ineffective assistance of counsel that Abercrombie presented during his direct appeal in Ohio courts was that his defense counsel was deficient in not obtaining the services of a DNA expert.  He also offers this argument as part of the present Ground One.

---

[95] *Id.* at 633-34 (internal citations and parenthetical comments omitted).

[96] *Id.* at 631 n.3.

However, as also noted earlier, he developed that claim in his brief to the state appeals court as including the concept that the alleged ineffectiveness in trial counsel not retaining a defense expert on DNA was because that expert was needed to inform defense counsel as to the methodology of the state DNA testing lab – a portion of the argument he makes here in Ground One that the State asserts is a new claim.

Ground One here also consists of the claim that defense counsel was ineffective in failing to object to the testimony of the mother of Anthony Brown, the deceased victim.[97] As noted, this argument was briefly made, but not developed, to the Ohio appeals court.

Based on a review of the full appellate brief in the Ohio court, I recommend finding that there is no new argument as to the current Ground One.  Although in the state court the heading of Abercrombie's claim in this respect did not precisely match the way it was argued, and Abercrombie only minimally developed parts of the argument on appeal that he treats more extensively here, Ground One of his federal habeas petition alleging ineffective assistance of defense counsel is substantially the same as it was before the Ohio courts.

However, if the District Judge concludes that there are new arguments in this claim concerning ineffective assistance of trial counsel, as the State suggests, I recommend also finding that those new arguments would be barred here by *res judicata* and do not destroy exhaustion.  To the extent these new arguments rest on evidence apparent from the existing record, they would now require Abercrombie to file a delayed Ohio Appellate Rule 26(B)

---

[97] ECF # 1 at 4.

motion in the Ohio appellate court.  However, *res judicata* would bar such a delayed Rule 26(B) petition in the Ohio appeals court.  In particular, as the Sixth Circuit stated in *Fautenberry v. Mitchell*:[98]

> [T]he Ohio Supreme Court [has] held that res judicata is a proper basis upon which to dismiss an ineffective-assistance claim in a petition for post-conviction relief where a defendant who is represented by new counsel on direct appeal fails to raise that claim and the basis for that claim "could fairly be determined without examining evidence outside the record."[99]

Ohio's bar of *res judicata* under these circumstances was further held by the Sixth Circuit in *Fautenberry* to be an adequate, independent state ground that is consistently enforced by the Ohio courts, thus constituting a procedural default in the federal habeas context.[100]

If, *arguendo*, Abercrombie would alternatively contend that any new ineffective assistance arguments rest instead on evidence outside of the record already developed, he must make those arguments in a postconviction petition under Ohio Revised Code § 2953.21. However, by the terms of that statute,[101] any such petition for postconviction relief must be filed within 180 days of when the trial transcript is filed in the court of appeals for the direct appeal – a period long past in this case.  Similarly, Abercrombie has not shown that he qualifies under either exception to that time limitation: (1) that he was either unavoidably prevented from discovering the facts upon which he needs to rely or that the United States

---

[98] *Fautenberry v. Mitchell*, 515 F.3d 614 (6th Cir. 2008).

[99] *Id*. at 633 (quoting *State v. Cole*, 2 Ohio St. 3d 112, 443 N.E.2d 169, 171 (1982)).

[100] *Id.* (citations omitted).

[101] Ohio Rev. Code § 2953.21(A)(2).

Supreme Court has recognized a new right that retroactively applies to his claim;[102] or (2) that he can show by clear and convincing evidence that, but for the alleged constitutional error at trial, no reasonable factfinder would have found him guilty.[103]

Accordingly, because the time limits of Ohio's postconviction statute have also been found to be adequate, independent state law grounds that are regularly followed and consistently enforced, Abercrombie's failure to meet those time limits in this case, or to now offer any evidence of cause and prejudice related to that failure, support of a finding of procedural default by the federal habeas court.[104]  I note further in this regard that the State's return of the writ put Abercrombie on notice that these claims were arguably subject to dismissal as procedurally defaulted, and he has made no response.[105]

Therefore, alternatively, I recommend that if the District Court finds that there are portions of Ground One containing ineffective assistance of counsel arguments not previously presented to the Ohio courts – that defense trial counsel was not properly informed of laboratory methodology and that counsel failed to object to the testimony of the victim's mother – those elements should be dismissed here as procedurally defaulted.

---

[102] Ohio Rev. Code § 2953.23(A)(1)(a).

[103] Ohio Rev. Code § 2953.23(A)(1)(b).

[104] *See*, *Jells v. Mitchell*, 538 F.3d 478, 503 (6th Cir. 2008).

[105] *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir.), *amended on reh'g*, 307 F.3d 459 (6th Cir. 2002).  Habeas claims should not generally be dismissed on grounds of procedural default without giving petitioner a chance to respond.

### 2.     *Ground Two should be dismissed as a non-cognizable claim*

As more fully outlined earlier, Ground Two – the claim concerning the admission of purported victim-impact testimony at trial – was, with the exception of a single, conclusory sentence, argued to the Ohio courts on state law grounds.  As such, it is, as the State notes here, non-cognizable in a federal habeas proceeding, unless, as was noted earlier, the violation of state law was so egregious that the petitioner was denied a fundamentally fair trial.

Here, Abercrombie in his second ground for relief includes the argument that the admission of the testimony denied him a "fair trial."[106]  In the first instance, I note that the rules concerning fair presentment of claims as federal constitutional issues are clear that mere use of a general, conclusory, catch-all phrase like the denial of a "fair trial,"as used here, is not enough to state a claim that federal constitutional rights were violated.[107]  Thus, ground two remains a state law claim non-cognizable in this proceeding unless the state law violation denied Abercrombie a fundamentally fair trial.

In that second context, I note, as was outlined before, that the Supreme Court has defined "very narrowly" the category of state law infractions that violate "fundamental fairness."[108]  Specifically, the federal habeas court must consider the extent to which the

---

[106] ECF # 1 at 5.

[107] *See*, *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006).

[108] *Bey*, 500 F.3d at 522.

evidence in question is "'material in the sense of a crucial, critical, highly significant factor.'"[109]

In this case, as the state appellate court observed, the testimony at issue was "very brief."[110]  The victim's mother testified only to the facts that the two victims were brothers, lived near where the crime was committed, and established the schools the victims attended together with the years of attendance.[111]  As the Ohio court noted, this testimony chiefly "corroborated other evidence that was presented during trial that the victims knew the defendant from school."[112]  The court also pointedly stated, and an independent review of the transcript confirms,[113] that the victim's mother "did not give any testimony about the impact the crimes had upon her or her family."[114]

Accordingly, I recommend initially finding that Ground Two was presented to and decided by the Ohio courts as a state law claim.  I further recommend finding that this state law claim does not raise any issue here of fundamental fairness.  I finally recommend

---

[109] *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007), quoting *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000).

[110] ECF # 12, Attachment at 158.

[111] *Id.* at 158-59.

[112] *Id.* at 159.

[113] *See*, *id.* at 1461-64.

[114] *Id.* at 159.

finding, to the extent that this claim raised an issue as to ineffective assistance,[115] that it be denied on the basis that counsel cannot be ineffective for failing to object to testimony that is not, in itself, improper.  Here, the finding of the state court that the testimony at issue "does not qualify as improper 'victim-impact evidence' as described in [Ohio law]"[116] is binding on this Court[117] and so precludes a finding of ineffective assistance of counsel with respect to a failure to object to this testimony.

**3.      *Ground One should here be denied inasmuch as the decision of the state court denying the claim of ineffective assistance of counsel as to the failure to retain a defense expert in DNA was not an unreasonable application of clearly established federal law.***

Ground One – that defense counsel was constitutionally ineffective for not retaining a defense expert in DNA and the methodology of DNA testing – was addressed by the Ohio appeals court under the long-established two-prong test of *Strickland*, as that federal law standard was incorporated into Ohio law.[118]  The state court concluded that Abercrombie had "not established either prong of an ineffective assistance claim based on the record before us,"[119] and so denied the claim.

---

[115] I note again that this issue of ineffective assistance was raised, if briefly, to the state court where it was not addressed.  As such, it is before this Court for a *de novo* adjudication.

[116] ECF # 12, Attachment at 159.

[117] *Wainwright*, 464 U.S. at 84 (1983).

[118] ECF # 12, Attachment at 154.

[119] *Id.* at 155.

-30-

Specifically, the appeals court noted first that, under Ohio law, questions regarding the reliability of the DNA test go to the weight of the evidence, not its admissibility.[120] In this case, the court observed that Abercrombie was also not challenging the admissibility of the DNA evidence but instead contending that his trial counsel should have retained an expert in DNA methodology to challenge the methods used by the prosecution is his case.[121]

In such circumstances, the court initially observed, "there is no indication that the methodology used by [the prosecution's expert] were (sic) flawed and/or no evidence that an expert would testify to that effect."[122]  Indeed, given that the methods used in this case were those previously upheld by the Ohio Supreme Court, the appeals court here noted that the decision not to retain a defense expert on DNA test methodology "was a tactical decision."[123]  Under these facts, the appellate court reasoned, "it is possible that an expert witness on this topic may have approved of the [prosecution's] methodology and thereby bolstered the prosecution's case."[124]

The court also stated that defense counsel "thoroughly cross-examined" the prosecution's expert on the matter of whether that expert intentionally used the entire DNA

---

[120] *Id.*

[121] *Id.*

[122] *Id.*

[123] *Id.*

[124] *Id.*

sample before the defense could run its own test, resulting in "no evidence that the consumption of the DNA evidence by the State's testing was the result of bad faith."[125]

As to the prejudice prong of *Strickland*, the Ohio decision found:

> Even if an independent test had resulted in the exclusion of the defendant's DNA as a possible contributor to the DNA found at the crime scene, the State had a strong case with the testimony of the surviving victim, who knew the defendant.... [T]he possible exculpatory value of the destroyed DNA material would have been minimal.  At best, it would only have excluded the defendant as a possible contributor to the DNA material found on a beer bottle from the crime scene.  He would still have had to overcome the surviving victim's testimony that identified defendant as the shooter.[126]

I recommend finding that the state court opinion here does not unreasonably apply either prong of *Strickland* to the facts of this case.  In particular, I note that there is particular force in the appeals court argument that whatever the theoretical benefits of retaining a defense expert in DNA methodology to either question the prosecution's methods or try to create a case of spoilation as a basis to throw out the DNA evidence in its entirety, there is little basis to believe that those hypothetical results would do anything to "overcome the surviving victim's testimony that identified [Abercrombie] as the shooter."  On that ground alone, Ground One should be denied.

---

[125] *Id.* at 156-57.

[126] *Id.* at 157-58.

## Conclusion

For the foregoing reasons, I recommend that the petition of Ramon Abercrombie for a writ of habeas corpus be dismissed in part and denied in part, as outlined above.

Dated:   May 21, 2010                          s/ William H. Baughman, Jr.
                                               United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[127]

---

[127] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-33-